THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Management Group Investors, LLC.,

    *Plaintiff*,

    v.

Aeropuertos Dominicanos Siglo XXI, S.A. et. al.,

    *Defendants*.

Civil No. 24-01285 (MAJ)

## OPINION AND ORDER

### I.   Introduction

This case involves a contractual dispute between Management Group Investors, LLC., ("Plaintiff") and Aeropuertos Dominicanos Siglo XXI, S.A. et. al. ("Defendants") concerning a commercial venture involving airport concessions services at several international airports in the Dominican Republic. Before the Court is Defendants' Motion to Dismiss and Motion to Compel Arbitration. (**ECF No. 27**). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

### II.   Factual Background

According to the allegations set forth in the Complaint,[1] Plaintiff is a company organized under the laws of Puerto Rico with its principal place of business in Carolina, Puerto Rico. (**ECF No. 1 at 1 ¶ 1**). Defendant Aeropuertos Dominicanos Siglo XXI, S.A.

---

[1] For the purposes of resolving this Motion, the Court treats the facts alleged in the Complaint as if they were true. *Boit v. Gar-Tec Prod.*, Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("In determining whether a prima facie showing has been made, the district court is not acting as a factfinder. It accepts properly supported proffers of evidence by a plaintiff as true.").

("Aeropuertos") is an entity organized under the laws of the Dominican Republic, where it also maintains its headquarters. (**ECF No. 1 at 1 ¶ 2**). Defendants Mónika Infante-Henriquez and Fabien Gourdon are corporate officers at Aeropuertos. (**ECF No. 1 at 1-2 ¶¶ 3, 4**). Defendant Vinci Airports S.A.S ("Vinci"), a company that is organized and headquartered in France, is the parent company of Aeropuertos. (**ECF No. 1 at 1 ¶ 2**).

Pursuant to a contractual agreement with the Dominican Republic, Aeropuertos operates several international airports in the Dominican Republic. (**ECF No. 1 at 2 ¶ 9**). In 2005, Plaintiff entered into a sub-contract agreement with Aeropuertos ("sub-contract"),[2] whereby Plaintiff agreed to provide concessions services at the airports operated by Aeropuertos. (**ECF No. 1 at 3 ¶ 10**). On May 6, 2021, Plaintiff entered into an additional agreement with Aeropuertos in which Plaintiff assumed the responsibility to provide in-flight concessions services (the "May 2021 Agreement"). (**ECF No. 1 at 3–4 ¶¶ 10, 15**).

The sub-contract between Plaintiff and Aeropuertos was originally set to expire on March 31, 2030. (**ECF No. 1 at 4 ¶ 17**). By the terms of the May 6, 2021 in-flight concessions contract, however, the parties agreed that Aeropuertos would automatically extend to the sub-contract with Plaintiff any extensions granted to the underlying lease agreement between Aeropuertos and the government of the Dominican Republic. (**ECF No. 1 at 4 ¶ 17**). Subsequently, in an August 18, 2021 agreement, the parties adopted an analogous agreement to automatically extend the duration of the sub-contract involving in-terminal concession services (the "August 2021 Agreement"). (**ECF No. 1 at 5 ¶ 18**).

---

[2] According to the Complaint, Plaintiff entered into the agreement through a subsidiary corporation Inversiones Llers, S.R.L.. (**ECF No. 3 at ¶ 10**). Plaintiff asserts that by contract it is "the joint and several guarantor for each and every one of the obligations, of any nature, of Llers deriving from the ... agreement." *Id*. at ¶ 11.

Plaintiff asserts that it has invested over twenty-eight million dollars to support the infrastructural developments that arose from these and related agreements. (**ECF No. 1 at ¶¶ 10, 14, 20**).

According to the Complaint, in November 2023, Aeropuertos entered into a renewed agreement with the government of the Dominican Republic which extended the term of their lease agreement to March 31, 2060. (**ECF No. 1 at 6 ¶ 21**). Plaintiff contends that Defendants, by and through Ms. Infante-Henriquez and Mr. Gourdon, later repudiated their existing promise to extend the term of Plaintiff's sub-contract. (**ECF No. 1 at 6 ¶ 24**). Plaintiff does not allege that this conduct occurred in Puerto Rico. *Id*.

Plaintiff alleges that the May 2021 and August 2021 Agreements – which included the term at issue promising to extend the Plaintiff's sub-contract – were negotiated and executed in Puerto Rico.[3] (**ECF No. 1 at 5 ¶ 19**). Notably, however, there are no additional allegations in the Complaint that relate specifically to Puerto Rico. The contractual Agreements in dispute exclusively involved business activities that took place or were to take place in the Dominican Republic (**ECF No. 1 at 3 ¶ 10**). Each of the Defendants reside or do business in the Dominican Republic, not in Puerto Rico (**ECF No. 1 at 1–2 ¶¶ 2–5**). In addition, Plaintiff does not dispute that the contractual Agreements in question call for the application of Dominican law and require that any disputes be arbitrated in Santo Domingo, Dominican Republic. (**ECF No. 27–1**).

To advance the instant Motion, Defendants contend that the Court lacks personal jurisdiction over each Defendant, and that the contracts in dispute include valid and

---

[3]     Defendants contend that the May and August 2021 Agreements were each executed in the Dominican Republic, not in Puerto Rico. (**ECF No. 27 at 20–21**); (**ECF No. 27–1**). The Plaintiff disputes this allegation. Because the Court treats the allegations in the Complaint as true for the purposes of the instant Motion, the Court addresses the issue of personal jurisdiction under the assumption that both Agreements were executed in Puerto Rico.

enforceable arbitration clauses. (**ECF No. 27**). In its Response, the Plaintiff concedes that the arbitration clauses in question are enforceable; accordingly, Plaintiff urges the Court to compel arbitration rather than dismiss the matter for lack of jurisdiction. (**ECF No. 34**). In addition, Plaintiff requests leave of Court to conduct limited jurisdictional discovery in order to establish that the exercise of personal jurisdiction over Defendant's is permissible. (**ECF No. 34**).

### III.    Applicable Law and Analysis

The opposing parties agree that this case is not fit for adjudication in this tribunal. As noted above, Defendants move the Court to compel arbitration and Plaintiff acknowledges that the contractual agreements in dispute mandate arbitration. However, consensus among the parties ends there. Defendants assert that the Court lacks personal jurisdiction over this case. Accordingly, Defendants urge the Court to dismiss the case in its entirety. Plaintiff insists that the Court has proper jurisdiction over the Defendant, requests an opportunity to conduct limited jurisdictional discovery to prove that contention, and urges the Court to compel arbitration rather than dismiss the case.

Because the facts of this case do not permit the exercise of personal jurisdiction over Defendants, the Court finds that dismissal of the action is warranted.

#### A. Personal Jurisdiction

"Jurisdiction is the power of the Court to declare the law." *Dessus-Medina v. Hotel Wyndham San Jose Herradura - Costa Rica*, No. 19-cv-1492, 2021 WL 4509088, at *2 (D.P.R. Sept. 30, 2021). In order to exercise this power over a defendant, the Court must have personal jurisdiction. *See Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138 (1st Cir. 1995) ("Personal jurisdiction exercises the power of a court over a defendant."). In the absence of that power, "the only function remaining to the court is

that of announcing the fact and dismissing the cause." *Dessus-Medina*, 2021 WL 4509088, at *2 (citations and quotations omitted).

There are two categories of personal jurisdiction. First, a Court may exercise jurisdiction over a defendant when that defendant is subject to general personal jurisdiction in the forum-state in which the Court sits. *See* Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: […] who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). "General jurisdiction exists when the lawsuit is not directly based on the defendant's contacts with the forum, but when the defendant has engaged in systematic and continuous activities in said forum." *Gonzalez-Lopez v. CIGNA Grp. Ins.*, 609 F. Supp. 2d 161, 165 (D.P.R. 2008). Second, even where a defendant is not subject to general jurisdiction, a Court may exercise specific personal jurisdiction where the defendant has had certain minimum contacts with the forum. *See Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). In this case, Plaintiff asserts that the Court has specific personal jurisdiction over Defendants.

"In a diversity case, a federal court will look to state law when deciding whether to exercise personal jurisdiction over a nonresident defendant." *Ganis Corp. of California v. Jackson*, 822 F.2d 194, 196 (1st Cir. 1987). This determination involves a two-step analysis. First, the Court must determine whether the exercise of personal jurisdiction is warranted under Puerto Rico's long-arm jurisdiction statute. Next, the Court must determine whether the exercise of jurisdiction would comport with the Fifth Amendment Due Process Clause of the United States Constitution. "Because Puerto Rico's long-arm statute is coextensive with the outer limits of the Constitution, we march directly to the

constitutional inquiry." *Rodriguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 160 (1st Cir. 2022).

For the exercise of jurisdiction over a non-resident defendant to comport with the limits set by the Due Process Clause of the Fifth Amendment, the defendant must have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (citations and quotations omitted). Whether Defendants had sufficient "minimum contacts" with the forum is determined according to a three-prong test: in order to establish personal jurisdiction, (1) the cause of action must arise from or relate to the defendant's conduct within the forum; (2) the defendant must "purposefully avail" themselves of the forum; and (3) the exercise of jurisdiction must be reasonable and consistent with principles of justice and fair play. *See Rodriguez-Rivera*, 43 F.4th at 160; *see also Bluetarp Financial, Inc. v. Matrix Const. Co., Inc.*, 709 F.3d 72 (1st Cir. 2013).

To satisfy the first prong of the minimum contacts inquiry, the action must "arise out of" or be "related to" activities undertaken within the forum. *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007). This "flexible, relaxed standard" is focused "on the nexus between the defendant's contacts and the plaintiff's cause of action." *Id*. (citations and quotations omitted). However, as the Supreme Court has emphasized, "[t]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Under this prong, any conduct arising out of or related to the forum must comprise the "source and substance" of the dispute before the Court. *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). Where the cause of action is for an alleged breach of contract, we must ask whether the defendant's activity in the forum state was "instrumental either

in the formation of the contract or its breach." *Adelson*, 510 F.3d at 49 (quotations and citations omitted).

This case does not "arise out of" activities conducted in Puerto Rico. It is well-established that the mere act of contracting "with an out-of-state party" cannot alone "automatically establish sufficient minimum contacts in the other party's home forum[.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). In order to establish personal jurisdiction over a foreign defendant, "the plaintiff cannot be the only link between the defendant and the forum[,]" *Walden v. Fiore*, 571 U.S. 277, 285 (2014), and an "in-state injury alone is not sufficient" to establish jurisdiction. *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 261 (1st Cir. 2022). "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. With respect to contractual disputes, the Supreme Court has "emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 478 (holding that the relevant factors for determining personal jurisdiction in contract cases include "prior negotiations[,]" "contemplated future consequences," the "terms of the contract[,]" and the "actual course of dealing").

Here, the Complaint sets forth only one isolated allegation of conduct undertaken by any of the Defendants in Puerto Rico: that Defendants negotiated and executed the disputed contractual terms in Puerto Rico. (**ECF No. 1 at 5 ¶ 19**). While "prior negotiations" are relevant to determining the propriety of exercising personal jurisdiction, the facts of this case suggest that the "future consequences" of the contract, its "terms," and the "actual course of dealing" were all directed squarely towards the

Dominican Republic. *See Burger King*, 471 U.S. at 478. Indeed, the contract concerned business activities that were to be performed at airports located within the Dominican Republic; the contract built on a history of business relations between Plaintiff and Defendants that were centered in the Dominican Republic; and the contractual agreements in question call for the application of Dominican law and require that any disputes be arbitrated in Santo Domingo, Dominican Republic.

In *Ganis,* the First Circuit cautioned that an out-of-state defendant does not subject itself to personal jurisdiction merely by signing a contract in the forum state: "Certainly, the mere fact that an individual in Massachusetts executes a contract with a person in California does not automatically constitute sufficient contacts [with California] so as to confer a finding of personal jurisdiction" in California. 822 F.2d at 197. The same conclusion is warranted by the facts alleged in Plaintiff's Complaint: the mere fact that Defendants (individuals and entities from the Dominican Republic) executed a contract with Plaintiff (an entity in Puerto Rico) does not automatically permit this Court to exercise jurisdiction.[4] On the contrary, on the facts proffered in the Complaint, this Court lacks jurisdiction to adjudicate this matter.[5]

---

[4] The Court notes that the Plaintiff bears the burden of persuasion to establish personal jurisdiction over each and every Defendant. "Generally, the jurisdictional contacts of a subsidiary corporation are not imputed to its parent." *Rodriguez-Rivera*, 43 F.4th at 161 (*citing De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283–84 (1st Cir. 1999)). "The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is the sole owner of the subsidiary." *Id*. (*citing Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980)). "To establish jurisdiction over a parent company, under Puerto Rico law, a plaintiff must produce strong and robust evidence of control by the parent company over the subsidiary, rendering the latter a mere shell." *Id*. (*citing De Castro*, 198 F.3d at 283-84) (quotations omitted). In this case, Plaintiff neglects to articulate a jurisdictional argument as to each specific defendant, instead submitting arguments that fail to differentiate among the multiple Defendants. The Court declines to address this flaw in the Plaintiff's argument, however, because even assuming that all Defendants engaged in the forum-related conduct alleged in the Complaint, the Court would nonetheless lack jurisdiction over all Defendants.

[5] Because this case does not "arise out of" contacts Defendants made with Puerto Rico, the Court will not address the additional prongs of the "minimum contacts" test, that is, whether Defendants "purposefully availed" themselves of the laws and protections of the forum or whether the exercise of jurisdiction would be "reasonable." *Int'l Shoe Co.*, 326 U.S. at 316.

Plaintiff also requests leave to conduct discovery on the jurisdictional issue. (**ECF No. 34**). But additional discovery would not change this analysis. There is no doubt that "[t]he inquiry into minimum contacts is […] highly idiosyncratic, involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case." *Pritzker*, 42 F.3d at 60. Accordingly, a court may look beyond the pleadings to "specific facts set forth in the record." *Vapotherm*, 38 F.4th at 257 (citations and quotations omitted). However, the Court is ordinarily not required to conduct discovery to resolve a challenge to the Court's jurisdiction. Instead, "[t]he most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). Under this "prima facie" approach, the Court accepts a plaintiff's proffers as true and "construe[s] these proffers in a light most favorable to plaintiff's jurisdictional claim." *Bluetarp Financial*, 709 F.3d at 79. Here, because the exercise of personal jurisdiction over the Defendants would not comport with due process even if all of Plaintiffs allegations were proven true, discovery would be futile. Plaintiff's request for leave to conduct jurisdictional discovery is therefore denied.

### B. Motion to Compel Arbitration

In order to enforce a valid arbitration clause, a district court must ordinarily enter a stay of the federal action and issue an order compelling arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (holding that a district court does not have discretion to dismiss a suit on the basis that all pending claims are subject to arbitration, and instead must stay the action pending arbitration). As the Supreme Court clarified in *Spizzirri*,

however, the district court is not barred "from dismissing the suit if there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration. If, for example, the court lacks jurisdiction, § 3 [of the Federal Arbitration Act] is no bar to dismissing on that basis." *Id.* at 476 n.2. Where the district court lacks personal jurisdiction over the Defendant and that objection has not been waived, the court must dismiss the action.[6]

Accordingly, since the court lacks jurisdiction over this matter, the Court will refrain from addressing the question of arbitrability.

## IV.   Conclusion

Crediting the allegations in the Complaint and viewing those allegations in a light most favorable to the Plaintiff, the Court finds that it lacks personal jurisdiction over any of the Defendants. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is therefore **GRANTED** and Plaintiff's request for leave to conduct jurisdictional discovery is **DENIED**. In the absence of jurisdictional power to compel Defendants to arbitrate these claims, the pending Motion to Compel Arbitration is **DENIED**.

---

[6] While the Supreme Court does not specify in *Spizziri* whether dismissal for lack of personal jurisdiction is mandatory or permissive where the Defendant has filed a motion to compel arbitration, the Court finds that it is required to address the threshold jurisdictional question before reaching Defendant's motion. Recently, the Fifth Circuit held that a court cannot rule on arbitrability without subject-matter and personal jurisdiction. *Hines v. Stamos*, 111 F.4th 551 (5th Cir. 2024). That holding makes good sense: without subject matter and personal jurisdiction, the Court lacks authority to declare the law. Prior cases from other circuits conform to this view. *See Vaden v. Discover Bank*, 556 U.S. 49, 52 (2009) ("Section 4 of the Federal Arbitration Act … authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, 'save for [the arbitration] agreement,' over 'a suit arising out of the controversy between the parties.'") (*quoting* 9 U.S.C. § 4)); *see also Rodríguez-Rivera v. Allscripts Healthcare Sols.*, Inc., 43 F.4th 150, 167 (1st Cir. 2022) (concluding "that the district court could have exercised personal jurisdiction" before "turn[ing] to the next issue: whether the suit should not have been brought in a federal court because [the parties] … had an agreement to arbitrate disputes like this one"); *see also InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) ("We therefore hold that so long as the parties are bound to arbitrate and the district court has personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration").

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of December 2024.

>    **_/s/ María Antongiorgi-Jordán_**
>    **MARIA ANTONGIORGI-JORDAN**
>    **UNITED STATES DISTRICT JUDGE**